**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PATRICK S. LASLEY,

          Plaintiff,

                vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 1:10-cv-394

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Patrick S. Lasley filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, all of which the Defendant disputes and also moves the Court to remand this case pursuant to Sentence Six of 42 U.S.C. §405(g). As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

On February 9, 2005, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging a disability onset date of November 5, 2004, due to rheumatoid arthritis, possible fibromyalgia, and sleep apnea. (Tr. 55). Plaintiff was born on August 22, 1953, thus, he was 51 years old at the time of his alleged disability and 54 years old at the time of the hearing. (Tr. 12, 44, 231). After Plaintiff's claims were denied initially and upon reconsideration, (Tr. 26-29),

he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  (Tr. 32).
On September 12, 2007, an evidentiary hearing was held, at which Plaintiff was
represented by counsel.  (Tr. 231-281).  At the hearing, ALJ Samuel A. Rodner ("ALJ
Rodner") heard testimony from Plaintiff and Diane Lasley, Plaintiff's wife.  ALJ Rodner
also heard testimony from Dr. George Parsons, an impartial vocational expert ("VE
Parsons").

On October 22, 2007, ALJ Rodner entered his decision denying Plaintiff's SSI
and DIB applications.  (Tr. 12).  ALJ Rodner's "Findings," which represent the rationale
of the decision, were as follows:

1. The claimant met the insured status requirements for the disability
   insurance benefits on his alleged onset date of November 5, 2004, and
   continues to meet them through December 31, 2009.

2. There is no evidence that the claimant has engaged in any substantial
   gainful activity since his alleged onset date (20 CFR 404. 1520(b) and
   404.1571 *et* seq.).

   ……………………

3. The claimant has the following severe impairments:  rheumatoid arthritis,
   chronic low back pain, and obesity (20 CFR 404.1520(c)).

   ……………………

4. The claimant does not have an impairment or combination of impairments
   that meets or medically equals one of the listed impairments in 20 CFR
   Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
   404.1526).

   ……………………

5. Careful consideration of the entire record, shows that the claimant has the
   residual functional capacity to perform a range of sedentary work.

   ……………………

6.     The claimant is capable of performing past relevant work as owner/manager of furniture buying clubs.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

      ……………………

7.     The claimant has not been under a disability, as defined in the Social Security Act, from November 5, 2004 through the date of this decision (20 CFR 404. 1520 (f)).

      ……………………

(Tr. 17-22).  Thus, ALJ Rodner concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.  (*Id.*).  Plaintiff's request for review by the Appeals Council was denied (Tr. 4), making the decision of ALJ Rodner the final administrative decision of the Commissioner.

In his statement of errors, Plaintiff argues that the ALJ erred when he: 1) found that Plaintiff could perform his past light-work managerial job, which was beyond the exertional demands of the ALJ's RFC finding for sedentary work; and 2) discounted the opinion of Plaintiff's treating rheumatologist, Arthur Kunath, M.D., ("Dr. Kunath"), and substituted himself as a medical expert to determine Plaintiff's RFC.  In the alternative, Plaintiff argues that new evidence submitted to the Appeals Council concerning medical treatment obtained after ALJ Rodner closed the record, warrants remanding the case for further development at the administrative level under sentence six of 42 U.S.C. §405(g).  (Doc. 4).

**II.  Analysis**

**A.  Applicable Law**

The following principles of law control resolution of the issues raised in this case.  Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C.

§405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's denial of benefits. Substantial evidence is "such relevant evidence as a reasonable mind might except as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hephner v. Matthews,* 574 F.2d 359 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C.  §§416(i), 423.  Establishment of a disability is contingent upon two findings.  First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §423(d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment

that exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. §1382(a); 20 C.F.R. §416.202.  Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R. §416.202.  To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months.  Plaintiff must also show that the impairment preludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  20 C.F.R §416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment.  If the individual is unable to perform the relevant past work, then a prima facie case of disability is

established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform.  *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981).

The Commissioner is required to consider the individual's impairments in light of the Listing of Impairments.  20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work.  20 C.F.R. §404.1525(a).  If the individual suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience.  20 C.F.R. §404.1520(d); *Kirk,* 667 F.2d at 528.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.  *Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

Plaintiff has the burden of establishing disability by a preponderance of the evidence.  *Born v. Secretary of Health and Human Servs.* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971).  Once plaintiff establishes a prime facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.  *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173;

6

*Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980).  To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements.  *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978).  *See also Richardson v. Secretary of Health and Human Services,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam).  Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prime facie case of disability.  20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323.  *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs."  *Richardson,* 735 F.2d at 964 (per curiam) (emphasis in original); *O'Banner,* 587 F.2d at 323.  When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform.  *Born,* 923 F.2d at 1174; *Varley v. Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner may meet his burden of identifying other work the claimant

7

can perform through reliance on a vocation expert's testimony to a hypothetical question.  To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's mental and physical limitations.  *Early v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Felisky,* 35 F.3d at 1036.  However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."  *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted).  In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538.  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."  *Felisky,* 35 F.3d at 1036.  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review."  *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  *Rogers,* 486 F.3d at 247.  Rather, such determination must find support in the record.  *Id.*  Whenever a claimant's complaints regarding symptoms of their intensity and persistence are not supported by

8

objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."  *Id.*  The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.*  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect.  *Id.*  In this case, Plaintiff alleges that the two identified errors at the fourth and fifth steps of the sequential analysis require this Court to reverse the Commissioner's decision.

## B.  Specific Errors

### 1.  Plaintiff's Physical RFC / Dr. Kunath

Plaintiff argues that ALJ Rodner improperly discounted the opinion of Plaintiff's treating physician, Dr. Kunath, and substituted himself as a medical expert to determine Plaintiff's RFC.  The Commissioner contends that in determining Plaintiff's RFC ALJ Rodner properly weighed Dr. Kunath's opinions and was correct in rejecting said opinions because they were unsupported and inconsistent with his treatment records. The Court notes that ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R §404.1527(e)(2).  In this case, however, ALJ Rodner's summary rejection of Dr. Kunath's opinion that Plaintiff cannot work a full day is not supported by substantial evidence.  20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is *well-supported by medically acceptable*

*clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added).  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

In regards to Dr. Kunath's treatment of Plaintiff, his notes showed that Plaintiff had no inflammatory process. (Tr. 110-111,118).  ALJ Rodner also noted that Plaintiff's synovitis[1] was last present on December 15, 2003, when he had only trace synovitis at the wrist and metacarpophalangeal joints ("MCPs").  (Tr. 119).  Dr. Kunath last found significant synovitis, at the light level, mostly in the second and third MCPs on August 1, 2003.  (Tr. 121).  Dr. Kunath also found that upon examination, Plaintiff's right knee had only modest effusion and tenderness.  (Tr. 119).  Since February 10, 2004, Dr. Kunath did not find any significant swelling in Plaintiff's hands, wrists, or fingers, or anywhere else.  (Tr. 106-117).  In addition, Plaintiff's C-Reactive Protein ("CRP") had been normal since December 21, 2004, and the last time Plaintiff had a positive CRP was on June 29, 2004, prior to his alleged onset date.  (Tr. 141, 144).  On December 15, 2003, Plaintiff's sedimentation rate was normal at 11.  (Tr. 147).  On December 13, 2005, the sedimentation rate was still normal at 4, with 0 to 20 being the normal range.  (Tr. 134).

On October 18, 2006, Dr. Kunath examined Plaintiff due to complaints of pain and stiffness in his hands and thumbs.  (Tr. 107).  On physical examination, Dr. Kunath found some loss of cartilage in the MCPs of both thumbs, but there were no erosive changes.  (*Id.*).  Plaintiff's MCPs in his other fingers were normal.  (*Id.*).  Dr. Kunath

---

[1] Synovitis is the medical term for inflammation of the synovial membrane.  This membrane lines joints which possess cavities, known as synovial joints.  The condition is usually painful, particularly when the joint is moved.  The joint usually swells due to synovial fluid collection.  *See Definition of Synovitis,* Merriam-Webster.com (July 19, 2011, 11:08 A.M.), http://www.merriam-webster.com/medlineplus/synovitis.

stated that except for loss of cartilage, x-rays of both hands were essentially normal. (*Id.*). At this time, Dr. Kunath referred to Plaintiff's rheumatoid arthritis as "quite stable." (*Id.*).

On January 17, 2007, Plaintiff returned to Dr. Kunath for a follow-up examination. Plaintiff reported that he continued to do well. (Tr. 106). Plaintiff said that he did not have any significant red, warm, or swollen joints, although he complained of occasional increased activity with more stiffness. (*Id.*). Plaintiff said that this condition lasted a day or more and that morning stiffness lasted only about 15 minutes. (*Id.*). After review, Plaintiff's October 2006 blood tests were normal. (*Id.*). Plaintiff's physical examination showed that his shoulders had full range of motion, and there was no synovitis in Plaintiff's elbows, wrists, or hands. (*Id.*). As a result, Dr. Kunath stated that Plaintiff's rheumatoid arthritis appeared to be quite well controlled symptomatically. (*Id.*).

On September 7, 2007, Dr. Kunath completed an RFC on Plaintiff and found that he could stand and/or walk at least 2 hours in an 8 hour workday. (Tr. 208-215). Dr. Kunath did not specify as to restrictions on Plaintiff's sitting limitations but indicated that he should be allowed to alternate between sitting and standing. (Tr. 209). Dr. Kunath also limited reaching in all directions, handling, and fingering, without further specifics. (Tr. 211). At this time, given Plaintiff's condition, Dr. Kunath's opined that Plaintiff was unable to work a full day or could only work part time 2 to 3 hours, 2 to 3 days a week. (Tr. 213).

Based on the above, ALJ Rodner found that Dr. Kunath's physical findings, were "markedly inconsistent" with his opinion that Plaintiff was unable to work a full day or could only work part time 2 to 3 hours, 2 to 3 days a week. (Tr. 20). As a result, ALJ

11

Rodner determined that Dr. Kunath's opinions were poorly explained and very inconsistent with other significant evidence, including his clinical signs and laboratory findings, which show that Plaintiff's rheumatoid arthritis has been well controlled since November 5, 2004.  (*Id.*).  ALJ Rodner ultimately found that Plaintiff was "able to stand and/or walk 4 hours total in a work day."  (*Id.*).  Thus, ALJ Rodner rejected Dr. Kunath's findings and set forth an RFC based upon his own determinations of Plaintiff's medical and physical limitations.

The Court finds that said rejection of Dr. Kunath's opinion on Plaintiff's inability to work was erroneous because here, there is no "other substantial evidence" to make such a determination.  Specifically, there are no other medical opinions that ALJ Rodner can point to support his RFC finding.  "Ultimately…the determination of disability is the prerogative of the [Commissioner], not the treating physician."  *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985).  However, an administrative law judge is not free to set his own expertise against that of a physician who testified before him.  *Golofski v. Califano,* 607 F.2d 1063, 1068 (3rd Cir. 1979).  While an expert medical opinion as to disability to engage in substantial gainful employment is admissible for consideration by the Hearing Examiner, and not, in itself, binding upon him, nevertheless, if such opinion is not controverted by substantial evidence to the contrary, the Hearing Examiner's decision adverse to such expert medical opinion, must be set aside.  *Colwell v. Gardner,* 386 F.2d 56, 72 (6th Cir. 1967). Furthermore, in the instant case all of the evidence came from a treating physician, and the expert opinions of treating physicians are binding on the ALJ unless contradicted by substantial evidence to the contrary.  *Dehate v. Secretary of HHS,* 791 F.2d 932 (6th Cir. 1986).  In addition, Plaintiff testified

that he could stand for only 15 minutes without interruption and could only walk 10 to 15 minutes without interruption.  (Tr. 259-260).  Therefore, ALJ Rodner erred in rejecting Dr. Kunath's opinion.

### 2.  Vocational Expert's Testimony

Plaintiff contends in his second statement of error that ALJ Rodner erred when he relied on VE Parsons' testimony and classified Plaintiff's former job as an owner/manager of furniture buying clubs as a "light job," thus, qualifying Plaintiff to become re-employed as such.  (Doc. at 16-19).  Plaintiff also contends that ALJ Rodner erred when he relied on VE parson's testimony that in addition to being able to perform "light jobs" there was also a significant number of "sedentary jobs" that Plaintiff could perform.  (*Id.*).  Plaintiff argues that ALJ Rodner's finding of sedentary work conflicts with his finding that Plaintiff can perform his past relevant managerial work, which is considered light work.  (*Id.* at 18-19).

To determine the physical exertion requirements of work in the national economy, jobs are classified as *sedentary, light, medium, heavy* and *very heavy.*  These terms have the same meaning as they have in the *Dictionary of Occupational Titles,* published by the Department of Labor.  In this case, for making disability determinations under this subpart, the Court uses the following applicable definitions:

(a) *Sedentary Work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light Work.* Light work involves lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category

when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567.

The Court notes that ALJ Rodner's determination that Plaintiff may have a physical residual functional capacity ("RFC") to perform work at a light exertional level, rather than strictly sedentary, as specifically provided for in his actual RFC, appears to be inconsistent.  (Tr. 17).  Thus, since the Court is recommending remand on other grounds the ALJ should also address this inconsistency on remand.

### 3.  Credibility Assessment and Evaluation of Pain

Although not specifically set forth as an error, Plaintiff also finds fault with ALJ Rodner's conclusion that his testimony was not entirely credible.  Specifically, Plaintiff claims that ALJ Rodner failed to consider all the factors listed in 20 C.F.R. §§404.1529, 416929 and Social Security Ruling 96-7p.  With respect to his subjective complaints of elbow, wrist, hand, and finger pain, depression and anxiety, Plaintiff alleges that ALJ Rodner failed to adequately consider Plaintiff's symptoms and testimony to the extent that they purported to describe a condition of a disabling nature.  (Doc. 12 at 4).  Plaintiff also argues that ALJ Rodner erroneously relied upon Plaintiff's daily activities, including vacuuming at home and visiting people from his church in determining his lack of credibility.  (*Id.* at 7).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.

14

*Jones,* 336 F.3d at 475.  However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Id.* at 476 (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it can be proper for an ALJ to discount the claimant's testimony.  *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th Cir. 2004).

ALJ Rodner noted various factors in his decision which caused him to question Plaintiff's credibility.  For instance, he noted that Plaintiff testified that he has major rheumatoid flares 2 to 3 times a month and minor rheumatoid flares 2 to 3 times a week. (Tr. 249).  During the major flare-ups, Plaintiff said that on a scale of 1-10, his pain reaches 8 with 10 being the worst pain imaginable.  (Tr. 253).  Plaintiff also alleges significant side effects from his medication, especially Methotrexate, such as dizziness, lightheadness, and nausea.  (Tr. 250).  Plaintiff testified that Compazine helps to control the nausea.  (Tr. 252).  ALJ Rodner determined Plaintiff's testimony to be inconsistent with Dr. Kunath's note dated January 17, 2007, that stated, "although Plaintiff experienced occasionally increased activity and stiffness, he had no acute or severe flare ups that would inhibit or impair his activity."  (Tr. 106).  ALJ Rodner noted that besides mentioning nausea, for which Compazine was helping quite well, the other side

effects alleged by Plaintiff are not documented.   Although, Plaintiff reportedly engages in a wide variety of activities which appear inconsistent with a totally debilitated individual such as vacuuming, sweeping with a broom, driving a car, grocery shopping, and doing the laundry; Plaintiff also testified that in order to complete such activity he has to take frequent rest breaks of varying duration.  (Tr. 256-257, 260-261, 264, 268-270).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993).  Although, based on the record as a whole, it appears that the credibility finding is supported by substantial evidence, since the Court is recommending a remand on the other grounds, the ALJ should re-evaluate his credibility determination on remand.

### III. Conclusion and Recommendation

Plaintiff advocates for outright reversal and an award of benefits, but moves in the alternative for remand.  "If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & human Servs.,* 17F.3d 171, 176 (6th Cir. 1994).  Otherwise, the court should remand to the Commissioner for further consideration.

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases because there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher,* 17

F.3d at 174.  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

Although the ALJ did not provide substantial evidence to support his conclusions, the undersigned does not find compelling evidence that Plaintiff is entitled to benefits. Accordingly, this matter should be remanded for further consideration.

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1.    The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ should be instructed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) seek consulting opinions if necessary; and (3) reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for benefits.

3.    As no further matters remain pending for the Court's review, this case be **CLOSED.**

> *s/Stephanie K. Bowman*
> United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PATRICK S. LASLEY,

        Plaintiff,

    vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:10-cv-394

Dlott, J.
Bowman, M.J.

<u>**NOTICE**</u>

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

18